UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KAREN E. PORET                                              CIVIL ACTION

VERSUS                                                      NO. 11-527

MICHAEL J. ASTRUE, COMMISSIONER                            SECTION "I" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Karen E. Poret, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

## I.    PROCEDURAL HISTORY

Poret filed applications for DIB and SSI on May 18, 2009, alleging disability since April 24, 2009, due to blood clots, T7-C3 bulging disc, arthritis, carpal tunnel syndrome, tennis elbow, diverticulitis, hiatal hernia, cyst, neck and back problems. (Tr. 102-08, 136-41). After her applications were denied, Poret requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 12, 2010. (Tr. 23-48). On February 22, 2010, the ALJ issued a decision denying plaintiff's applications for

benefits. (Tr. 10-19). After the Appeals Council denied review on January 20, 2011, the

ALJ's decision became the final decision of the Commissioner for purposes of this

court's review. (Tr. 1-5).

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    The ALJ failed to account for limitations caused by pain.

B.    The ALJ's residual functional capacity assessment is not supported by
       substantial evidence because she failed to give controlling weight to the
       opinions of plaintiff's treating physicians.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.    Poret has not engaged in substantial gainful activity since the alleged onset
       date of April 24, 2009.

2.    She has severe impairments consisting of degenerative disc disease of the
       cervical spine with radiculopathy, chronic venous insufficiency, Budd-
       Chiari syndrome,[1] dermatophytosis (ringworm) and migraine headaches.
       Her ovarian cyst, colon polyp and diverticulitis are not severe impairments,
       but have been considered in determining her residual functional capacity.

3.    Plaintiff has the residual functional capacity to perform sedentary work,
       with the added limitations that she can frequently, but not continuously,
       reach overhead bilaterally; can frequently, but not continuously, handle and

---

[1]Budd-Chiari syndrome is an obstruction of hepatic venous outflow. "Manifestations range from no symptoms to fulminant liver failure. . . . Treatment includes supportive medical therapy and measures to establish and maintain venous patency, such as thrombolysis [blood clot dissolution], decompression with shunts, and long-term anticoagulation." The Merck Manual Online (Dec. 2007), http://www.merckmanuals.com/professional/hepatic_and_biliary_disorders/vascular_disorders_of_the_liver/hepatic_vein_disorders.html?qt=Budd-Chiari syndrome&alt=sh.

2

finger items using her right, dominant hand; and must avoid even moderate exposure to hazards in the workplace, such as moving machinery and unprotected heights.

4.   Although Poret's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

5.   She is not capable of performing her past relevant work as a customer service clerk.

6.   Plaintiff is capable of performing work that exists in significant numbers in the Louisiana and national economies, such as a referral or information aide, information clerk and parimutuel ticket checker.

(Tr. 12-19).

IV.   ANALYSIS

A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971);

Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[2] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§

---

[2]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2008).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[3]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is

---

[3]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

B.   Factual Background

Poret testified that she was 43 years old, widowed and lived with her two adult children.  She completed the ninth grade but dropped out of high school before completing the tenth grade.  She testified that she last worked on April 20, 2009, when she was fired from her job at a casino for being rude to a customer "and my illnesses." She denied that she had been rude to a customer.  (Tr. 27-28).  She did not apply for worker's compensation.  She said she had not looked for work since then because she had diverticulitis, a polyp on her colon, ovarian cysts and a hiatal hernia within the month before she was fired, "so I really shouldn't have been at work."  (Tr. 28-29).

Plaintiff testified that she has not had any cervical spine surgery because she does not have insurance.  She stated that her pain medication makes the pain subside.  She said the only time that her pain was not under control was when she had diverticulitis and had to be hospitalized.  (Tr. 29).  Otherwise, she stated that she just toughs it out with the pain medications for her back problems.  (Tr. 29-30).

6

Poret did not recognize the diagnosis of Budd-Chiari syndrome that is in her medical records, but she confirmed that she has had five blood clots and is on Coumadin[4] for the rest of her life.  She believed that she still has one blood clot in her groin because her doctor wanted her to have a stent put in her groin.  (Tr. 30).  She testified that she takes a double dose of Coumadin daily and that it makes her feel "terrible," nauseous and "weird."  She said that Coumadin is rat poison.[5]

Plaintiff stated that she was diagnosed with diverticulitis[6] in April 2009, before she was fired from her job.  She testified that the diverticulitis had resolved and she does not take any regular medication for it, but that it will come back if she eats certain foods, like chips or nuts.  (Tr. 31).

Poret said she was diagnosed with an ovarian cyst in April 2009 and was supposed to have an ultrasound, but has not scheduled the test because she is "scared about it."  She stated that the cyst is located close to her groin and causes pain or discomfort.  (Tr. 32).  She testified that she already had a problem in the groin area as a result of poor

---

[4]Coumadin (generic name:  warfarin) is an anticoagulant (blood thinner) used to reduce blood clot formation and to prevent and/or treat blood clots in the legs and lungs.  PDR Health (Physicians' Desk Reference) (PDR Network, LLC 2011), http://www.pdrhealth.com/drugs/coumadin.

[5]Warfarin was "was initially marketed as a pesticide against rats and mice and is still popular for this purpose."  Wikipedia, http://en.wikipedia.org/wiki/Warfarin#cite_ref-Holbrook_0-1.

[6]"Diverticulitis is inflammation of a diverticulum, which can result in phlegmon [purulent inflammation] of the bowel wall, peritonitis, perforation, fistula, or abscess.  The primary symptom is abdominal pain. . . .  Treatment is with antibiotics . . . and occasionally surgery."  The Merck Manual Online (Nov. 2007), http://www.merckmanuals.com/professional/gastrointestinal_disorders/diverticular_disease/diverticulitis.html.

circulation in her legs and a leakage in the valve in a vein in her left mid-calf that takes blood back to her heart.

Plaintiff testified that she has carpal tunnel syndrome and tennis elbow in her right arm, which were diagnosed years ago and have been worsening since she was in a motor vehicle accident. She is right-handed. She stated that she also has a problem from the T-7 to C-3 levels in her back, which causes her to lose feeling in her hand and she drops everything. She said that Dr. Gervais[7] wanted her to have surgery for that. She testified that she has never had surgery or a carpal tunnel release. (Tr. 33-34).

Poret stated that the pain in her neck is excruciating and that she is trying to get an MRI or CAT scan. She testified that the pain travels from the top of her head and joins at her neck. (Tr. 34-35). She stated that she has three bulging discs on her left side. She said that her back hurts very badly and makes it difficult to sit, stand and walk. She stated that the pain in her back travels down the sciatic nerve into her left leg.

Concerning her right hand, plaintiff testified that she cannot type any more and that writing is difficult because she drops everything. She said she is being treated for depression as a result of her husband's death and losing her house. (Tr. 35). She stated that she sees Dr. Schlosser once a month, who treats her for pain, and that she sees Dr. Dumas at Jefferson Community Health Center twice a month for her internal medicine

---

[7]Plaintiff was seen by a neurologist, Donald Gervais, Jr., once in December 2007 and once in June 2008. (Tr. 285-87, 363-64).

problems, including her Coumadin prescription.  (Tr. 35-36).  She said that she wears a thick surgical stocking on her left leg for her blood clots.

Poret testified that she stays in bed and watches television all day.  She said she used to cook, clean, garden and do everything around the house, but now the only thing she does is drive to pick up her children from work each day.  She stated that she does very little around the house and she has to go to bed if she does anything.  She said she cannot squat to work in the garden.  (Tr. 36-37).  She testified that she used to ride a motorbike, but cannot any more because of the jolting.  She said she used to go on vacations, but now she cannot ride in a car for a long distance because, with her history of deep vein thrombosis and blood clots, she has to stop every hour on the hour to get out and stretch to allow the blood to flow.  She said she can no longer pick up her grandchildren and hold them.  She testified that her children cook her meals and bring them to her in bed because she cannot stand long enough to cook a meal.  (Tr. 37-38).

Plaintiff said she can only stand for about ten minutes before she feels excruciating pain in her left leg and back.  She stated that she can only walk about one-half block before she feels heaviness and pain in her left leg.  She testified that she cannot climb stairs, kneel or squat.  (Tr. 39).  She said she can only lift about ten pounds on a good day because her right hand gives out.  She stated that she can sit for only 10 to 15 minutes and she moves a lot.  She testified that she lies down all day during a typical day until it is time to go to a doctor's appointment or to get her children from work.  (Tr. 40).  She

said she does not have the energy to get up and she is in so much pain from head to toe because of her arthritis. (Tr. 40-41).

Poret stated that she could not return to her past work as a loan officer at a thrift business because she cannot type, kneel to file papers, sit for very long, stand for very long or collect money for payments. She said she is unable to feel with her right hand how much money she would be given. She testified that sitting makes her hurt very badly and that her leg swells up like a balloon if she stands. (Tr. 41-42).

After the vocational expert testified, Poret stated that she wears a medic bracelet and that she could die if she were cut, such as a paper cut from filing papers or handling tickets or boxes, unless she receives treatment very quickly. She said she could only turn her head a limited amount to the left because of her bulging discs, but can turn all the way to the right. She did not believe that anyone would hire her to work with these limitations. (Tr. 47).

C.    Vocational Expert Testimony

A vocational expert, Pat Green, testified at the hearing that plaintiff's past relevant work as a customer service clerk was semi-skilled at a light exertional level; her work as a telephone book deliverer was also semi-skilled, but at the medium level; and her work as a casino representative was unskilled and light. (Tr. 43).

The ALJ posed a hypothetical of an individual with the residual functional capacity to lift up to 20 pounds occasionally; lift or carry up to ten pounds frequently in

light work, as defined by the regulations;[8] must be able to alternate sitting and standing at will; can never climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs, balance, stoop, crouch, kneel or crawl; can frequently reach and reach overhead bilaterally; can frequently handle and finger using her dominant right hand; and must avoid even moderate exposure to hazards, such as moving machinery or unprotected heights, because of Coumadin use.  Green testified that such a person could perform the past relevant job of customer service clerk, but none of the other jobs.  (Tr. 44).

The ALJ modified the hypothetical so that the individual has the residual functional capacity to lift up to ten pounds occasionally in sedentary work as defined by the regulations, can frequently reach and reach overhead bilaterally, and can frequently handle and finger items using her dominant right hand, with the same limitation on exposure to hazards.[9]  Green testified that the hypothetical claimant could not perform any of Poret's past relevant work.

The ALJ then asked Green to assume an individual with plaintiff's age, education and work experience and the same functional capacity as in the first hypothetical.  (Tr.

---

[8]"Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A job is also in this category if it involves very little lifting but requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(a).

[9]"Sedentary work" involves lifting no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers and small tools; sitting for about six hours out of an eight-hour work day; and occasionally walking or standing.  20 C.F.R. § 404.1567(a); Holifield v. Astrue, 402 F. App'x 24, 24 n.1 (5th Cir. 2010) (citing Ripley v. Chater, 67 F.3d 552, 557 n.25 (5th Cir. 1995)).

44).  Green testified that such a person could perform unskilled, light jobs such as ticket seller, hand packager and assembler of small products, which are available in the state and national economies.  (Tr. 44-45).

The ALJ asked whether other jobs are available that a person with plaintiff's age, education and work experience and the residual functional capacity of her second hypothetical could perform.  Green testified that such an individual could perform the sedentary, semi-skilled jobs of referral and information aide and information clerk, and the sedentary, unskilled job of a parimutuel ticket checker, which are available in significant numbers in the state and national economies.  (Tr. 45).

Finally, the ALJ asked whether competitive work would be available if the hypothetical person is unable to engage in sustained work activity for eight hours per day, five days per week because of a combination of medical conditions and associated pain.  Green stated that all competitive work would be precluded.  (Tr. 45).

Plaintiff's attorney modified the first and fourth hypotheticals to include the claimant's frequent inability, because of pain, to concentrate on job tasks, amounting to two-thirds of the day.  Green testified that such a limitation would eliminate all work. Plaintiff's attorney modified the third and fourth hypotheticals to include a restriction that the hypothetical claimant has to lie down for more than one hour during an eight-hour day.  Green testified that this restriction would also eliminate all work.

D.   Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 15-17).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.   Plaintiff's Appeal

1.   The ALJ failed to account for limitations caused by pain.

2.   The ALJ's residual functional capacity assessment is not supported by substantial evidence because she failed to give controlling weight to the opinions of plaintiff's treating physicians.

Both of plaintiff's assignments of error rely on her argument that the ALJ erred by failing to give controlling weight to the opinions of her treating physicians, Charles E. Schlosser, III, M.D., a specialist in physical medicine and rehabilitation and pain, and Jeremy Dumas, M.D., an internist at Jefferson Community Health Center.  Accordingly, I address these assignments of error together.

At the fourth step of the sequential evaluation, the ALJ must determine, based on all of the relevant medical and other evidence in the record, the claimant's residual functional capacity, which is her ability to do physical and mental tasks on a sustained basis despite limitations from her impairments.  Cline v. Astrue, 577 F. Supp. 2d 835, 847-48 (N.D. Tex. 2008) (citing Perez, 415 F.3d at 462; 20 C.F.R. § 416.945(a)(3)).  In determining residual functional capacity, "the Commissioner must consider all of a

13

claimant's impairments, including those that are not severe." Giles v. Astrue, No. 10-31006, 2011 WL 2847449, at *3 (5th Cir. July 18, 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545).

The ALJ found that Poret has the residual functional capacity to perform sedentary work, with the added limitations that she can frequently, but not continuously, reach overhead bilaterally; can frequently, but not continuously, handle and finger items using her right, dominant hand; and must avoid even moderate exposure to hazards in the workplace, such as moving machinery and unprotected heights. Based on the testimony of the vocational expert, the ALJ held at the fifth step that Poret can perform work that is available in the state and national economies, such as a referral or information aide, information clerk and parimutuel ticket checker.

The day after the hearing, Drs. Schlosser and Dumas each completed a form "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." (Tr. 456-59, 460-63). By checking off specific areas of functional limitation and writing brief supporting reasons on the form, both physicians opined that plaintiff's residual functional capacity is severely limited by her cervical and lumbar pain secondary to radiculopathy and history of bulging disc, her reduced abilities to grip with her right upper extremity and to reach with her upper extremities, and her need to avoid vibrations and hazardous machinery because of cervical and lumbar pain. Dr. Schlosser also cited plaintiff's ovarian cyst and diverticulitis as causes of abdominal pain. These functional limitations,

14

if accepted by the ALJ, would dictate that Poret cannot perform sedentary work, even with the additional limitations that the ALJ imposed in her decision.

Plaintiff argues that the ALJ was required to give controlling weight to the opinions of her treating physicians because they are supported by substantial evidence and are not inconsistent with any other substantial opinion evidence. Citing Newton, 209 F.3d at 453, Poret contends that the ALJ erred by failing to address specifically every factor set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d) when declining to give controlling weight to these opinions. Plaintiff argues that the ALJ should not have afforded any weight to the opinion of the non-examining physician who reviewed plaintiff's medical records as of July 17, 2009, when compared to the opinions of the treating physicians rendered six months later after Poret had received additional treatment.

Although the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should generally be accorded great weight in determining disability,

> the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

15

Newton, 209 F.3d at 455-56 (quotations and citations omitted).

Poret relies on the Fifth Circuit's holding in Newton that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Id. at 453. But when the record does contain "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, . . . the ALJ was not required to apply the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Thibodeaux v. Astrue, 324 F. App'x 440, 445 (5th Cir. 2009) (citing Newton, 209 F.3d at 453, 456) (emphasis added).

The ALJ specifically addressed the opinions of Drs. Schlosser and Dumas on which Poret relies. The ALJ did not accord the opinions controlling weight because she found that "they are inconsistent with other opinion evidence and are not fully supported by the record as a whole. Nonetheless, significant consideration was given to these opinions, in light of the treating relationship between these sources and the claimant." (Tr. 17). The ALJ further explained that she "assigned weight" to the opinion of the non-examining medical consultant who reviewed plaintiff's medical records and to the opinions of Drs. Schlosser and Dumas "to the extent that those opinions are supported by the treatment evidence. Controlling weight was not assigned to one source over

another. Rather, each limitation set forth by the opining sources was evaluated in terms of the evidentiary support in the treatment records." (Tr. 18).

I find that the ALJ adequately explained her reasons for not affording controlling weight, but still giving "significant consideration," to the opinions of Drs. Schlosser and Dumas. The medical evidence substantially supports a finding that those opinions are partially inconsistent with the physicians' own treatment notes, as well as with the opinion of the medical consultant who reviewed plaintiff's medical records. The ALJ's findings regarding Poret's residual functional capacity are supported by substantial evidence in the record, as follows.

First, the mere diagnosis of an impairment does not establish a claimant's disability claims. Bordelon v. Astrue, 281 F. App'x 418, 421 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon v. Barnhart, 184 F. App'x 430, 431(5th Cir. 2006); Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)). Plaintiff "'must show that she was so functionally impaired by [her diagnosed impairment] that she was precluded from engaging in any substantial gainful activity.'" Bordelon, 281 F. App'x at 421 (quoting Hames, 707 F.2d at 165); accord Anthony v.

17

<u>Sullivan</u>, 954 F.2d 289, 293 (5th Cir. 1992); <u>Hamauei v. Astrue</u>, No. 10-85, 2011 WL 802398, at *7 (E.D. La. Feb. 28, 2011) (Lemelle, J.) (citing <u>Hames</u>, 707 F.2d at 165). Thus, Poret's diagnosed medical impairments, some of which the ALJ acknowledged were severe and could reasonably be expected to cause some of her alleged symptoms, do not of themselves establish disability.

Second, pain may constitute a non-exertional impairment that can limit the jobs a claimant would otherwise be able to perform. <u>Beck v. Barnhart</u>, 205 F. App'x 207, 212 (5th Cir. 2006); <u>Carnahan v. Apfel</u>, 247 F.3d 241, 2001 WL 43543, at *3 (5th Cir. 2001); <u>Selders v. Sullivan</u>, 914 F.2d 614, 618 (5th Cir. 1990).  However, the mere existence of pain does not establish disability.  "Pain constitutes a disabling condition when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'"  <u>Falco v. Shalala</u>, 27 F.3d 160, 163 (5th Cir. 1994) (quoting <u>Selders</u>, 914 F.2d at 618-19); <u>accord Doss v. Barnhart</u>, 137 F. App'x 689, 690 (5th Cir. 2005); <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001).  Subjective complaints of pain or other symptoms must be corroborated by objective medical evidence, <u>Quijas v. Astrue</u>, 298 F. App'x 391, 393 (5th Cir. 2008) (citing <u>Chambliss</u>, 269 F.3d at 522), and the alleged symptoms may be discounted when they are not consistent with the objective medical evidence.  <u>Brown v. Astrue</u>, 344 F. App'x 16, 21 (5th Cir. 2009); <u>Hernandez v. Astrue</u>, 278 F. App'x 333, 340 (5th Cir. 2008) (citing <u>Anthony</u>, 954 F.2d at 295); <u>Dunbar v. Barnhart</u>, 330 F.3d 670, 672 (5th Cir. 2003).

18

It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. <u>Jenkins v. Astrue</u>, 250 F. App'x 645, 647 (5th Cir. 2007); <u>Chambliss</u>, 269 F.3d at 522. Whether a claimant is able to work despite some pain is within the province of the administrative agency, and the agency's determination should be upheld if supported by substantial evidence. <u>Jenkins</u>, 250 F. App'x at 647; <u>Chambliss</u>, 269 F.3d at 522.

Drs. Schlosser and Dumas both opined on January 13, 2010 that Poret's functional abilities are so limited by cervical and lumbar pain that she could not perform even sedentary work. Dr. Schlosser also identified abdominal pain from plaintiff's ovarian cyst and diverticulitis as a source of her functional limitations. However, the ALJ thoroughly reviewed all of the medical evidence and found that the limitations assessed by these opinions based on plaintiff's pain were not substantially supported by the entire record, including the physicians' own treatment notes. The ALJ also found the limitations inconsistent with the opinion of a non-examining physician, Nisha Singh, M.D., who reviewed plaintiff's records on July 17, 2009. (Tr. 435-36). Dr. Singh agreed with the residual functional capacity findings of the Social Security agency decision-maker dated July 9, 2009 (Tr. 427-34), who found that Poret's functional abilities qualified her to perform light work. Dr. Singh added a limitation that plaintiff should avoid even moderate exposure to hazards because she takes Coumadin.

Plaintiff argues that the ALJ improperly relied on the findings of the agency decision-maker, who is not a medical professional, and that the ALJ did not even mention Dr. Singh.  The ALJ in her decision referred to Exhibit 8F, the residual functional capacity form dated July 9, 2009 that was completed by the agency decision-maker.  The ALJ did not specifically cite Exhibit 9F, Dr. Singh's opinion dated July 17, 2009 that agreed with the residual functional capacity findings in Exhibit 8F.  "The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision."  Hammond v. Barnhart, 124 F. App'x 847, 851 (5th Cir. 2005).  "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected."  Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007).  It is clear from the ALJ's decision that she considered the medical opinion of "the State Agency consultant who reviewed the medical records" (Tr. 17), namely, Dr. Singh.  No substantial rights of plaintiff were affected by the ALJ's failure to identify Dr. Singh by name or to cite Exhibit 9F in addition to Exhibit 8F.

The ALJ is required to consider the opinions of State agency medical or psychological consultants like Dr. Singh, who are considered non-examining experts. 20 C.F.R. § 404.1527(f)(2)(i).  Although the ALJ must consider such evidence, she is not bound by any findings made by such consultants.  Butler v. Barnhart, 99 F. App'x 559, 560 (5th Cir. 2004); Alejandro v. Barnhart, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003).

The ALJ did not adopt the extreme limitations assessed by Drs. Schlosser and Dumas, but she also disagreed with Dr. Singh's assessment that Poret can perform light work. The ALJ incorporated into her residual functional capacity findings some limitations more severe than Dr. Singh's, based on the treatment records from Drs. Schlosser and Dumas, among others, while also including some of the limitations that Dr. Singh recommended. The medical records substantially support the ALJ's rejection of the more severe limitations assessed by Drs. Schlosser and Dumas.

Poret testified that she was fired from her casino job on April 20, 2009 for being rude to a customer, that she did not seek worker's compensation and that she did not look for work after that date. She told Dr. Schlosser on May 4, 2009 that she had been fired, not that she became unable to work because of her medical conditions. (Tr. 424). Her alleged onset date is April 24, 2009, immediately after she was fired. However, a claimant is <u>not</u> disabled if she remains unemployed because of lack of work or the hiring practices of employers (such as being fired), rather than because her medically determinable impairments render her functionally unable to work. 20 C.F.R. §§ 404.1566(c), 416.966(c); <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988); <u>Gabriel v. Chater</u>, No. 1:95-CV-74, 1996 WL 450681, at *4 (E.D. Tex. July 18, 1996), <u>report & recommendation adopted</u>, 1996 WL 571501 (E.D. Tex. Aug. 9, 1996).

Moreover, Poret worked for at least two years despite chronic cervical and lumbar pain, which reportedly had been aggravated by a motor vehicle accident in March 2007,

21

and pre-existing medical conditions, including deep vein thrombosis, migraines, lower back pain, mild cervical degenerative disc disease at C5-6 and C6-7, which was diagnosed by magnetic resonance imaging in March 2006 and July 2007 (Tr. 312-14), and C7 radiculopathy to her right arm and hand, which was diagnosed by electromyogram on December 18, 2007.  (Tr. 276-79).  A lumbar x-ray on the same date revealed a "question of spondylolysis[10] at L5 without spondylolisthesis."[11]  (Tr. 307).  Plaintiff's ability to work for two or more years despite the same conditions that allegedly caused her disability immediately after she was fired is evidence that the conditions are not disabling.  Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995); Fraga v. Bowen, 810 F.2d 1296, 1305 (5th Cir. 1987); Reid v. Astrue, No. 3:10CV237, 2011 WL 4101302, at *5 (S.D. Miss. Aug. 15, 2011), report & recommendation adopted, 2011 WL 4101277 (S.D. Miss. Sept. 8, 2011) (citing Outlaw v. Barnhart, 197 F. App'x 825, 827 (11th Cir. 2006); Vaughan, 58 F.3d at 131); Fontenot v. Comm'r of Soc. Sec., No. 2:08-cv-217, 2009 WL 891789, at *6 (W.D. La. Mar. 31, 2009) (Minaldi, J.) (citing Vaughan, 58 F.3d at 131); Azema v. Astrue, No. 07-2833-LMA-SS, 2008 WL 2952472, at *12 n.4 (E.D. La. July 25, 2008) (Africk, J.) (citing Vaughan, 58 F.3d at 131).

---

[10]Spondylolysis means dissolution of a vertebra.  Dorland's Illustrated Medical Dictionary 1684 (29th ed. 2000) (hereinafter "Dorland's").

[11]Spondylolisthesis is the displacement of one vertebra over another.  Id. at 1684.

Plaintiff was treated with medication for her pain by doctors at Axcess Medical N.O.E., including Dr. Schlosser, from December 19, 2007 through April 6, 2009 and then by Dr. Schlosser at a different clinic through December 14, 2009.  She saw Dr. Dumas for treatment of Budd-Chiari syndrome, deep vein thrombosis and migraines beginning one year before her alleged onset date, with her last visit to him on May 29, 2009.  Dr. Dumas prescribed Coumadin for her deep vein thrombosis.  He gave her Toradol[12] injections for migraines once a month during the second half of 2008 and in January 2009, but none after that visit.

The medical records during the relevant period of twelve months before her alleged onset date through the date of Dr. Singh's residual functional capacity assessment on July 17, 2009 indicate that Poret experienced improvement with medication until her pain and cervical radiculopathy were routinely noted to be stable and controlled, with no side effects from her medications.  (Tr. 340-42, 349-68, 420, 450).  On repeated physical examinations, she demonstrated continued pain and tenderness in her cervical and sometimes lumbar areas, but her neurological, muscle and motor examinations were generally intact and within normal limits, except that she had decreased grip strength in

---

[12]Injectable Toradol (generic name: ketorolac tromethamine) is a nonsteroidal anti-inflammatory drug used for the short-term treatment of moderate to severe pain, usually following surgery.  It is also used to treat migraine headaches.  MedicineNet.com (MedicineNet, Inc. 2011), http://www.medicinenet.com/ketorolac-injection/article.htm (visited Nov. 3, 2011); M.A.G.N.U.M.: Migraine Awareness Group: A National Understanding for Migraineurs, Treatment & Management, Drug Profiles: Toradol (2010), http://www.migraines.org/treatment/pro_tora.htm (visited Nov. 3, 2011).

her right hand and subjective sensory loss in her right arm.  (Tr. 201-03).  She displayed

weakness in her left leg and antalgic[13] gait at some, but not all, of her doctor's visits.  Her

left groin pain was eventually diagnosed as diverticulitis, which resolved according to

the medical records and her own testimony, and an ovarian cyst.  Although Dr. Schlosser

recommended on June 1, 2009 that Poret follow up with a gynecologist regarding her

ovarian cyst (Tr. 451), there is no record of any such follow up.

Plaintiff argues that the ALJ should not have assigned any weight to Dr. Singh's

assessment and instead should have afforded controlling weight to the opinions of Drs.

Schlosser and Dumas rendered , in part because Dr. Singh did not review the additional

medical records after July 17, 2009.  However, Dr. Dumas did not see Poret after May

29, 2009, so Dr. Singh's assessment would not have been affected by any additional

records from Dr. Dumas.

Furthermore, Dr. Dumas only saw plaintiff twice after her alleged onset date, and

then only to draw blood, review lab test results and treat her for sinusitis.  (Tr. 213-14).

His treatment records begin one year before the alleged onset date and end on May 29,

2009, more than seven months before he completed the residual functional capacity form

on which plaintiff relies.  His treatment notes reflect that he treated plaintiff for

occasional upper respiratory and sinus infections, monitored her Budd-Chiari syndrome

---

[13]An antalgic gait is "a limp adopted so as to avoid pain on weight-bearing structures (as in hip injuries), characterized by a very short stance phase."  Dorland's at 721.

and deep vein thrombosis for which he prescribed Coumadin, and administered a series of Toradol injections for her migraine headaches, but none after January 14, 2009. His notes generally do not contain any findings on physical examination or diagnostic tests other than blood work, and he advised her to follow up with a neurologist or orthopedist regarding her neck and back complaints. The extreme functional limitations that Dr. Dumas assessed on January 13, 2010 based on Poret's cervical and lumbar pain are therefore not entirely consistent with or substantially supported by his own records.

As for Dr. Schlosser, he treated Poret several times after the date of Dr. Singh's assessment. At those visits, he noted plaintiff's complaints, including increased right hand numbness. He observed that she had edema in her left leg, and decreased sensation and positive signs of neurological problems in her right upper extremity. As he had done for the past eighteen months, he diagnosed her with chronic lower back and neck pain. However, he continued to describe her pain and spasms as stable. He noted that, other than her right hand, her physical examination remained unchanged with no changes in her strength, sensation, weakness, numbness or radiation of pain. (Tr. 447-49, 453-54). The limitations in the ALJ's residual functional capacity assessment on plaintiff's ability to reach overhead bilaterally and to handle and finger items using her right hand are substantially supported by Dr. Singh's assessment that she would "occ[asionally]" be limited in her overhead reaching (Tr. 430), and by Dr. Schlosser's treatment records and

the opinions of both Drs. Schlosser and Dumas that her functional capacity to reach overhead and to handle items was "limited."  (Tr. 457, 461).

However, the extreme limitations that Dr. Schlosser assessed on January 13, 2010 in plaintiff's exertional abilities are not substantially supported by the treatment records described above, notably including the objective diagnostic tests, which revealed only mild degenerative changes in plaintiff's cervical spine and questionable change in her lumbar spine, and Dr. Schlosser's repeated notations that her pain, spasms and radiculopathy were stable and controlled on medication.

Plaintiff herself testified that her pain medications made her pain subside and that the only time her pain was uncontrolled was when she had diverticulitis, which resolved. She said she had not scheduled an ultrasound because she was scared.  The medical records do not reflect any recommendation for surgery for the ovarian cyst or for plaintiff's neck, back or hand problems.  A claimant's lack of need for medication or failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

As she is obligated to do, the ALJ weighed conflicting medical opinions and resolved the conflict in favor of the opinions of Drs. Singh, Schlosser and Dumas, to the extent the latter two were supported by the treatment records.  Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Newton, 209 F.3d at 455 (quotation omitted) (emphasis added); see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").  The ALJ's decision shows that she carefully considered, but ultimately rejected, the conclusions of Drs. Schlosser and Dumas that Poret had no useful ability to function in all work-related activities.  "[T]he Act empowers the ALJ to analyze the physicians' testimony.  Substantial evidence supports the ALJ's decision to disregard the physicians' conclusions.  That basis is enough to survive our review."  Greenspan, 38 F.3d at 237.

Finally, plaintiff's argument that the ALJ must expressly consider the six factors in 20 C.F.R. § 404.1527 whenever the ALJ discounts a treating physician's opinion sweeps too broadly.  The Fifth Circuit held in Newton that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating

27

specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Newton, 209 F.3d at 453 (emphasis added).[14]

In this case, the ALJ did not completely reject the opinions of Drs. Dumas and Schlosser, but incorporated their diagnoses and part of their proposed limitations into her findings. She specifically gave "significant consideration . . . to these opinions, in light of the treating relationship between these sources and the claimant" (Tr. 17), which is one of the Section 404.1527(d)(2)factors. Moreover, as discussed above, the opinions to which the ALJ declined to give controlling weight were indeed controverted by reliable medical evidence, including the physicians' own treatment notes and other medical evidence in the record, which reflects on both the consistency and supportability factors.

Substantial evidence therefore supports the ALJ's residual functional capacity assessment in the instant case.

## CONCLUSION

The ALJ adequately accounted for plaintiff's pain and other limitations in her residual functional capacity assessment, which is supported by substantial evidence. The ALJ was not required to give controlling weight to the opinions of plaintiff's treating sources that were inconsistent with other substantial evidence of record.

---

[14]The six criteria are examining relationship, treatment relationship, supportability, consistency, specialization and "other factors." 20 C.F.R. § 404.1527(d)(2).

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[15]

New Orleans, Louisiana, this ___7th___ day of November, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[15]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.